Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2722 | **DATE** | 12/30/2002 |
| **CASE TITLE** | Kathleen Koszola vs. Board of Education of The City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Because Koszola failed to make out a case of prima facie discrimination and because the Board's hiring practices are governed by the consent decree, we find that the Board is entitled to summary judgment. For the foregoing reasons, the Board's motion for summary judgment (36-1) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 31 2002 date docketed | |
| | Notified counsel by telephone. | | | 64 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/30/2002 | |
| GL | courtroom deputy's initials | 02 DEC 30 PM 4:39 | date mailed notice GL mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN KOSZOLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. 01 C 2722 | |
| | ) | |
| BOARD OF EDUCATION OF | ) | |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
DEC 3 1 2002

MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Currently before us is Plaintiff Kathleen Koszola's lawsuit against the Board of Education of the City of Chicago ("Board").[1] Count I alleges racial discrimination in violation of Title VII of the Civil Rights Act. In Count III Koszola claims the Board deprived her of equal protection and seeks to recover under 42 U.S.C. §1983. Currently before us is the Board's Motion for Summary Judgment. For the following reasons, we grant the Board's motion.

**I. Background[2]**

*Koszola's Qualifications*

Plaintiff Koszola is a white woman who lives on Chicago's Northwest Side. Koszola has her bachelor's degree in teaching, and is certified to teach grades kindergarten through nine. Koszola

---

[1] Koszola's original lawsuit contained three counts. On March 12, 2002, we dismissed Count II of Koszola's complaint.

[2] The following facts are taken from the parties' Local Rule 56.1 Statements of Material Facts. In her response brief, Koszola relies heavily on evidence that was not included in either parties' Statement of Material Fact. Evidence submitted to the Court, but not included in the parties' Statements of Material Facts will not be considered for purposes of this motion. *See Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000) ("the district court is entitled to limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [56.1] statements").

64

served as a student teacher at Dirksen Elementary School, one of the Chicago Public Schools ("CPS"), from January to April 1994 while pursuing her bachelor's degree at Northeastern Illinois University. The Board does not dispute that Koszola has the minimum qualifications necessary for certain entry-level teaching positions with the CPS. The Board has presented evidence, however, that Koszola's teaching skills are less than stellar. The principal at Dirksen Elementary school, Dr. Keating, reports that "based on [Koszola's] performance as a student teacher, he perceived that she lacked the skills necessary to be an effective teacher." In particular, Keating perceived Koszola as having deficient classroom management and lesson-planning skills.

*Koszola's work as a substitute teacher for the Board*

From September 1995 to the Summer of 1997 Koszola worked as a substitute teacher for the Board. The vast majority of schools at which Koszola served as a substitute teacher were located on the North Side of the City, in Regions 1 and 2 of the CPS system.[3] In fact, between September 1995 and the summer of 1997, Koszola never served as a substitute teacher at any school in Regions 4, 5 or 6.

In 1997, while she was serving as a substitute at the Howe School, located on the West Side of Region 2, Koszola's car was vandalized. Koszola refused subsequent assignments at Howe, despite the Board's policy requiring substitutes to accept all assignments. After the Board's agents made unsuccessful attempts to discuss with Koszola her failure to accept the position at Howe, the

---

[3]The Chicago Public School District is separated into six regions running east-west across the City. Region 1 is the northern most region, and is bounded on the South by Irving Park Road. Region 2 includes the City's near North geographic area (Irving Park Road to North Avenue). Region 3 includes the City's central geographic area (North Avenue to 12th Street). Region 4 encompasses the City's near-South geographic area (12th Street to 39th Street). Region 5 includes the City's mid-South geographic area (39th Street to 71st Street). Region 6 is the southern most region with 71st Street as its northern boarder.

Board's Manager of Substitute Teacher Assignments, Ursula Anderson, informed Koszola that she was being demoted and would not be guaranteed full-time work as a substitute. On April 28, 1997, Koszola informed the Board by letter that she was resigning from employment as a substitute teacher with the Board. In the letter, Koszola wrote "I refuse to work on the West or South Side. I want to work only on the Northwest Side. But the Board of Education says I'm the wrong color. I don't need this aggravation. I give up teaching. You win. Go hire all the blacks and foreigners." Koszola Dep. Ex. 3. Shortly after sending this letter Koszola moved from Chicago to Palm Beach, Florida.

*Koszola's Pursuit of a Full-Time Teaching Position*

While working as a substitute for the Board, Koszola earnestly attempted to gain full-time employment as a teacher with the CPS. Despite Koszola's efforts towards this end, she was not hired, or even interviewed, for a full-time teaching position. Between the Fall of 1995 and April of 1997, and then again from August 1999 through June 2002, Koszola applied for dozens of full-time teaching positions. Despite her obvious desire to gain employment with the CPS, she applied only to schools located in Regions 1, 2, and 3.[4] Although Koszola admits her chances of obtaining a position were greater on the South Side, she did not apply to schools in Regions 4, 5, or 6. Koszola apparently refused to work on the South Side because it was too far a commute from her home on the Northwest Side and because she feared for her safety if she had to venture to the South Side of the City.

Koszola's entire suit rests upon her contention that the Board "froze her out" of its hiring process on the North Side because she is Caucasian. Koszola, however, has conducted no discovery

---

[4]Koszola claims to have sought positions at over 100 schools, but she can only identify 35 of the schools by name. Of those 35 schools, 29 are located in Region 1, five are located in Region 2, and one is located in Region 3.

and offers very little in the way of evidentiary support for her claim. Koszola claims to have applied to over 100 schools in the CPS, yet she can identify by name only thirty-five of the schools to which she applied. Koszola states that minorities were hired at six of the thirty-five schools to which she applied. These schools are Sayre, Norwood Park, Oriole Park, Hitch, Canty, and Dirksen.[5] Yet, with the exception of the Dirksen School, Koszola provides virtually no information about the hiring process at these schools. Indeed, the only information Koszola offers about Sayre, Norwood Park, Oriole Park, Hitch, and Canty is that the teachers hired in her stead were minorities. Koszola's Statement of Material Facts does not contain the dates on which she applied to these schools, for which positions she applied, or how and when she was informed that she would not be hired. Koszola does not provide the names of the teachers hired at these schools. Furthermore, Koszola offers no evidence about the qualifications, experience, or teaching skills of those hired at these schools.

The record is slightly more developed with regard to hiring at the Dirksen School. In 1995, the Board hired an Asian-American teacher, Mika Tsuchida, at Dirksen. The principal at Dirksen, Dr. Keating, recommended that the Board hire Tsuchida based on her strong personal interview and recommendations from college professors and the principal under whom she performed her student

---

[5] In addition to these six schools, Koszola contends that a minority was hired at an additional school that she was unable to identify. Koszola's Statement of Material Facts contains the following information with regard to the unidentified school: "[i]n the Fall of 1996 at a public school Plaintiff was substituting regularly the principal apologized to plaintiff for never interviewing plaintiff. She explained that she was forced to hire a minority and she told Plaintiff that Plaintiff was eight times better than the candidate she had. The principal nodded to a young black female, identifying her as the one she hired for the position." Pl. ¶ 57. Under the Rules of Civil Procedure, supporting affidavits "shall set forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e). Koszola has failed to identify the name of the school, principal, or "young black female" who was allegedly hired. As such, her assertion lacks proper evidentiary foundation and will not be considered by this Court.

4

teaching. Dr. Keating did not recommend that the Board hire Koszola because, based on her performance as a student teacher at Dirksen, he believed she lacked the skills necessary to be an effective teacher. Although Koszola applied to Dirksen School around the same time as Tsuchida was hired, it is not clear that they actually applied for the same position.

*The Consent Decree*

In 1977, the United States Department of Health, Education and Welfare ("HEW") found that the Board was ineligible for funding under the Emergency School Aid Act because the Chicago Public Schools were racially isolated. HEW further found that the Board was violating the United States Constitution and Title VI of the Civil Rights Act of 1964 "with respect to the issues of faculty and professional staff assignment and special bilingual instructional staff assignment and special bilingual instructional services." In 1980 the United States Department of Justice filed a complaint against the Board alleging that the Board maintained a racially segregated school system in violation of the Equal Protection Clause.

The Board settled the lawsuit with the Department of Justice by entering into a consent decree. The consent decree requires the Board to "provide for the establishment of the greatest practicable number of stably desegregated schools." The Board must "implement a plan to assure that the assignment of full-time classroom teachers to schools will be made in such a manner that no school is identified as intended for students of a particular race, color, or national origin." In addition, the decree provides that "with respect to the full-time classroom teachers in each school facility, the racial/ethnic composition and the proportion of experienced teachers will be between plus and minus fifteen percent of the systemwide proportions of such teachers with respect to such characteristics, and the range of educational training will be substantially the same as exists in the

system as a whole." The consent decree contains a waiver provision under which school principals may request the assignment of a teacher whose assignment would not aid compliance with the decree if there is a special need.

The six schools to which Koszola applied for teaching positions, but where she alleges minorities were instead hired, were not, in 1996 or 2000, in compliance with the consent decree's requirement that the racial/ethnic composition of teachers at each school be within plus or minus fifteen percent of the systemwide proportions of such teachers.

## II. Discussion

*Standard of Review*

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(citations omitted). Once the moving party has met this burden of production, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c).

*Analysis*

At the summary judgment stage, Koszola's burden is to come forward with evidence that gives rise to an inference that the employment action in question was taken for a forbidden

discriminatory reason. *See Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1169 (7th Cir. 1998). Koszola may meet this burden by proffering either direct or indirect evidence of discrimination. "Direct evidence essentially requires an admission by the decision-maker that his actions were based on prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Koszola has put forth no admissible direct evidence tending to show that the Board admitted it would not hire her because of her race. Koszola may also proceed under the indirect method, by which she must present evidence sufficient to establish a prima facie case of discrimination. In particular, Koszola must establish that (1) she is a member of a protected class; (2) she applied for, and was qualified for, an open position; (3) she suffered an adverse employment action; and (4) the Board treated similarly-situated applicants outside her class more favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 728 (7th Cir. 2001). To withstand summary judgment on her §1983 claim, Koszola must also establish that the Board acted with discriminatory intent. *See McPhaul v. Bd. of Commissioners of Madison County*, 226 F.3d 558, 564 (7th Cir. 2000).

The Board concedes that Koszola satisfies the first three components of the *McDonnell Douglas* framework.[6] Where Koszola fails, the Board argues, is in establishing the final prong, that the Board treated similarly situated applicants outside her class more favorably. We agree. In determining whether two employees are similarly situated a court must look at all relevant factors, such as the employees' attributes, experience, education, and qualifications relevant to the positions

---

[6]The Board concedes only that Koszola had the minimum qualifications for some entry-level teaching positions. While this showing is sufficient to satisfy the second prong of the *McDonnell Douglas* test, the Board has presented evidence that Koszola's teaching skills were inferior to those of other applicants.

7

sought. *See Radue*, 219 F.3d at 618. The plaintiff "need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." *Id.* Because the Board's hiring practices are governed by the consent decree, Koszola must show "that the Board allowed teachers of another race to work at schools even if their presence would have contributed to a racial imbalance among that school's faculty." *Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 728 (7th Cir. 2001). Koszola offers no evidence that the teachers hired in her stead were similarly situated. With regard to Sayre, Norwood Park, Oriole Park, Hitch, and Canty schools, the only evidence Koszola offers is that minorities were hired at these schools and she was not. Koszola does not provide the names of the teachers hired, or even basic information about their qualifications, experience, or skills. As such, even viewing the evidence in the light most favorable to Koszola, we cannot say that those teachers hired were "similarly situated" to Koszola. Furthermore, with regard to Sayre, Norwood Park, Oriole Park, Hitch, and Canty, Koszola did not offer evidence that the hiring of these teachers would not further the goals of the consent decree. Rather, Koszola concedes that these schools were not in compliance with the decree in either 1996 or 2000.[7] The hiring of minorities at these schools, therefore, would have furthered the goals of the decree.

Koszola has likewise failed to produce evidence of discrimination with regard to her application to the Dirksen School. Koszola applied for a position at Dirksen in 1995, around the time Tschida was hired. It is not clear, however, that they actually applied for the same position or that Tschida was hired instead of Koszola. The Board presented evidence that Dr. Keating hired Tsuchida based on her interview and the strong recommendations regarding her skills given to him

---

[7]Koszola repeatedly states that the northern regions of the CPS were racially balanced. This is irrelevant because the consent decree requires balance at each school, not each region.

8

by her college professors and the principal under whom she performed her student teaching. By contrast, Dr. Keating did not hire Koszola for a full-time teaching position because, "based on her performance as a student teacher, he perceived that she lacked the skills necessary to be an efficient teacher. In particular, Keating perceived Koszola as having deficient classroom management and lesson-planning skills." Def. Ex. 9. Koszola and Tschida, therefore, were not similarly situated because they possessed different skills. Furthermore, Koszola has not established that the decision to hire Tschida, an Asian-American, did not further the goals of the consent decree.

Based on the undisputed facts presented, Koszola cannot make out a prima facie case of discrimination and the Board is therefore entitled to summary judgment on Koszola's Title VII and §1983 claims. We note, however, that even if Koszola were successful in making out a prima facie case, her claims would fail because the Board acted pursuant to a constitutional consent decree. "It is well settled that a valid conciliation agreement and consent decree cannot form the basis of a Title VII action." *Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 728 (7th Cir. 2001)(quoting *Grann v. City of Madison*, 738 F.2d 786 (7th Cir. 1984)). Koszola, however, takes issue with the validity of the consent decree. Koszola does not directly challenge the constitutionality of the decree, but rather argues that the Board wrongfully executed the agreement. Koszola contends that the board is engaged in the "wholesale exclusion of non-minorities" without regard for their qualifications. Pl. Resp. 9. This generalization is wholly unsupported by the record. Koszola has not made out a prima facie case of discrimination, let alone established the "wholesale" exclusion of white teachers. There is no evidence that non-minority applicants are "frozen out" of the hiring process or that the Board does not review the qualifications of all applicants. Indeed, Koszola does not dispute that five of the six schools to which she applied were overwhelmingly staffed by white

9

teachers.[8] Furthermore, Koszola has put forth no evidence to suggest that the Board is not administering the consent decree in good faith or that the remedial purpose of the decree has been vitiated. Because Koszola failed to make out a case of prima facie discrimination and because the Board's hiring practices are governed by the consent decree, we find that the Board is entitled to summary judgment.

### III. Conclusion

For the foregoing reasons the Board's motion for summary judgment is granted. It is so ordered.

MARVIN E. ASPEN
United States District Court

Dated: 12/30/02

---

[8]Neither Koszola nor the Board has provided this Court with statistics regarding the sixth school, Dirksen.