CERTIFIED COPY

Mdd. C|K

# In the
# United States Court of Appeals
## For the Seventh Circuit

FILED
NOV 0 1 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COUR

No. 03-2428

KATHLEEN KOSZOLA,

*Plaintiff-Appellant,*

*v.*

DOCKETED
NOV 0 2 2004

BOARD OF EDUCATION OF THE CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.
No. 01 C 2722—Marvin E. Aspen, *Judge.*

ARGUED DECEMBER 2, 2003—DECIDED OCTOBER 8, 2004

Before RIPPLE, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Kathleen Koszola sued the Board of Education of the City of Chicago under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, for refusing to hire her for a full-time teaching position because she is white. The Board moved for summary judgment at the close of discovery. Citing the dearth of facts in Koszola's submissions pursuant to Northern District of Illinois Local Rule 56.1, the district court granted the Board's motion. We affirm, as Koszola has provided no evidence showing that she may have suffered discrimination.

76

I

Koszola's rocky tenure with the Board began in 1994. While pursuing her bachelor's degree in teaching at Northeastern Illinois University, Koszola spent a semester as a student teacher at the Dirksen Elementary School, a Chicago public school. After she graduated in 1995, Koszola served as a substitute teacher for the Board at a number of public schools on the North Side of Chicago, located in Regions 1, 2, and 3 of the Chicago Public Schools (CPS) system. Koszola never served as a substitute teacher in any school located on Chicago's South Side, which is divided into Regions 4, 5, and 6. Between 1995 and 1997, Koszola applied for a number of full-time teaching positions with the CPS, but she limited her search to schools on the City's North and Northwest Sides. The Board never hired her for any of these positions.

In 1997, while she was serving as a substitute teacher at the Howe School, located on the City's West Side in Region 2, Koszola's car was vandalized. After that negative experience, she refused all assignments at Howe, despite the Board's policy requiring substitute teachers to accept all assignments. The Board's manager of substitute teacher assignments, Ursula Anderson, repeatedly attempted to contact Koszola after this incident, but she did not respond. Anderson then demoted Koszola. On April 28, 1997, Koszola sent a resignation letter to the Board, stating: "I refuse to work on the West or South Side. I want to work on the Northwest Side, but the Board of Education says I am the wrong color. I don't need this aggravation. I give up teaching. You win. Go hire all the blacks and foreigners to balance the employment. I am not going to endanger my life anymore." From August 1999 through June 2002, Koszola again applied unsuccessfully for CPS teaching positions in schools on the North and Northwest Sides.

Since 1980, the Board's faculty hiring and assignment process for the CPS has been governed by a federal consent

decree arising from a lawsuit brought by the Department of Justice alleging that the Board maintained a racially segregated school system in violation of the Equal Protection Clause. The decree provides for "the establishment of the greatest practicable number of stably desegregated schools, considering all the circumstances in Chicago," and, to that end, calls for integration of both the student bodies and faculty of the CPS. With respect to faculty assignments, the decree requires that "[t]he Board will promptly implement a plan to assure that the assignment of full-time classroom teachers to schools will be made in such a manner that no school is identified as intended for students of a particular race." The decree dictates that "with respect to the full-time classroom teachers in each school faculty, the racial/ethnic composition and the proportion of experienced teachers will be plus and minus fifteen percent of the systemwide proportions of such teachers with respect to such characteristics, and the range of educational training will be substantially the same as exists in the system as a whole."

On April 17, 2001, Koszola filed a complaint against the Board in federal district court alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and the Equal Protection Clause. Specifically, she alleged that her applications for full-time employment with the CPS had "continually been rejected or not considered by Defendant because she is Caucasian." After discovery closed, the Board successfully moved for summary judgment. This appeal followed.

## II

Title VII of the Civil Rights Act of 1964 provides that it "shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). To prevail on her race discrimination claim, Koszola must either show direct evidence of discriminatory motive or intent or rely on the indirect burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The district court found that Koszola could not prevail under either approach. We review a district court's decision to grant summary judgment *de novo*. *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In doing so, we construe all facts and draw all reasonable inferences from those facts in favor of the non-moving party. *Id.*

In reviewing Koszola's Title VII claim, the district court considered only those facts included in the parties' Local Rule 56.1 statements of material fact, a decision that Koszola challenges on appeal. Under the Local Rules of the Northern District of Illinois, a party filing a motion for summary judgment under FED. R. CIV. P. 56 must serve and file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. Local R. 56.1(a)(3). Further, Local Rule 56.1(b)(3)(A) requires that the non-moving party file a reply, including "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." The reply must also include "any additional facts that require the denial of summary judgment," with appropriate references to the record. *Id.* at 56.1(b)(3)(B). Finally, Local Rule 56.1(b)(3)(B) provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." This court reviews the decision of a district court concerning compliance with local rules, such as Rule 56.1, only for

Paragraph 29. In addition, she replaced the text of Paragraph 57 in her response with the following: "In the fall of 1996 at a public school Plaintiff was substituting regularily (*sic*) the principal apologized to plaintiff for never interviewing plaintiff. She explained that she was forced to hire a minority and she told Plaintiff that Plaintiff was eight times better than the candidate she had. The principle (*sic*) nodded to a young black female, identifying her as the one she hired for the position." Koszola also attached an affidavit recounting several instances in which principals at certain Chicago public schools indicated that they would consider only minority candidates, but she did not include this information in her Rule 56.1(b) response.

In granting the Board's motion for summary judgment, the court explained that it had considered only the facts in the parties' Local Rule 56.1 Statements of Material Facts, as it was entitled to do. See *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Therefore, Koszola's only evidence of discrimination that the court considered was Paragraph 57 of her November response, which recounted an unidentified principal's comment that she was "force[d] to hire a minority." On appeal, Koszola argues that the court should also have considered Paragraph 57 of her September response, which listed specific schools that had hired nonwhite teachers and the races of these hires. We find no error in the court's exclusion of this latter paragraph because, as the district court indicated, it "inherently contradict[ed] facts in the Board's statement," the entirety of which Koszola had admitted. See *Andrews v. Branch 11 Nat'l Ass'n of Letter Carriers Union*, No. 01 C 3434, 2002 WL 483408, at *2 (N.D. Ill. Mar. 29, 2002) ("[T]he Court will disregard Plaintiffs' additional facts to the extent they contradict a fact Plaintiffs also admit."); *cf. United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) ("Affidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default admissions.").

Likewise, the district court did not abuse its discretion in limiting its review to the content of the parties' Local Rule 56.1 statements, excluding from consideration Koszola's attached affidavits. "[W]e have emphasized the importance of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002) (internal quotation marks omitted); see also *Ammons*, 368 F.3d at 817 (same); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (collecting cases). This means that a district court is entitled "to decide the motion based on the factual record outlined in the [Local Rule 56.1] statements." *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999); see *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995) (finding the court did not abuse its discretion in declining to consider a non-movant's affidavits because "it is a reasonable judgment on the part of the district court that strict, consistent, 'bright-line' enforcement is essential to obtaining compliance with [Local Rule 56.1] and to ensuring that long-run aggregate benefits in efficiency inure to district courts"). As the district court did not abuse its discretion in limiting its review of Koszola's Local Rule 56.1 statements and her supplemental materials, our *de novo* review of its grant of summary judgment will likewise rest only on the Board's Local Rule 56.1(a) statement and Koszola's November Local Rule 56.1(b) response.

On this record, Koszola has failed to carry her burden with respect to her Title VII claim. Under the direct method of proving discrimination, Koszola had to show either through direct or circumstantial evidence that the Board's decision to not to hire her was motivated by an impermissible purpose, such as her race. See *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938-39 (7th Cir. 2003). "Direct evidence essentially requires an admission by the decision-maker

that his actions were based on the prohibited animus." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (internal citation and quotation marks omitted).

As we are limited to the contents of Koszola's November Local Rule 56.1(b) response, the only evidence related to discrimination that we may consider is the statement in her revised Paragraph 57 quoted above, about the "forced" hiring of a minority candidate. The district court refused to consider this statement on the ground that it "lacks proper evidentiary foundation." The basis for this conclusion is not entirely clear, as we would expect this statement to be admissible under FED. R. EVID. 801(d)(2)(D) as the admission of a party-opponent, that is, "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Yet even if Paragraph 57 is properly before us, it is not sufficient to permit Koszola to recover under the direct method. Koszola filed her Local Rule 56.1 statement after the close of discovery, yet the *only* evidence of discrimination included in her statement consisted of this assertion that an unidentified principal at a unidentified Chicago public school told her that she was "eight times better" than an unidentified African-American hire. There is no evidence in the record showing that Koszola ever attempted to depose this principal, to identify the teacher hired, or to establish the teacher's qualifications. Furthermore, this statement is inconsistent with Koszola's admission that she "does not know the name, qualifications, date of assignment, or otherwise have any personal knowledge

regarding any persons who were assigned to full-time positions which she sought with the Chicago Public Schools."

For this same reason, Koszola cannot prevail under the indirect burden-shifting method outlined in *McDonnell Douglas*. Under this approach, a plaintiff must present evidence tending to show: (1) she was a member of a protected class; (2) she applied for, and was qualified for, an open position; (3) the employer rejected her for the position; and (4) the employer filled the position with an individual outside of the plaintiff's protected class, or the position remained vacant. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). At that point, the defendant has a chance to articulate a legitimate, nondiscriminatory reason for its action; if it does so, the plaintiff must offer evidence showing that the defendant's reason is pretextual. *Id.* at 694-95. As the Board has conceded that Koszola has satisfied the first three elements of *McDonnell Douglas*, we need only consider the last part. In *Greer v. Bd. of Educ. of the City of Chi.*, 267 F.3d 723 (7th Cir. 2001), we indicated that the showing required under the fourth element of *McDonnell Douglas* must take the federal consent decree into account, and that a plaintiff would have "to show, at minimum, that the Board allowed teachers of another race to work at schools even if their presence would have contributed to a racial imbalance among that school's faculty." *Id.* at 728.

We need not decide here exactly how the consent decree might affect Koszola's case, because she presented no evidence that might have shown a violation of the decree's guidelines. In her Local Rule 56.1(b) statement, Koszola admitted that she can identify only five schools by name "at which she was told that an African-American or Hispanic teacher was hired for a full-time position at or near the times she sought a full-time position at the individual school." She further admitted that five of these schools were not within the +/- 15% compliance guidelines during the rele-

vant time period, with nonwhite faculty underrepresented at all five schools. In addition, she admitted that she "does not know the name of any of the five minority teachers that she was told were hired [at these schools], nor does she know anything about their teaching skills and qualifications." Koszola also identified a sixth school at which an Asian-American was allegedly hired for a position in which Koszola had expressed interest, but she produced no evidence showing that this hire contributed to a racial imbalance in the school's faculty. Moreover, in her Local Rule 56.1(b) response, she admitted that the principal at the school "did not hire Koszola for a full-time position because, based on her performance as a student teacher, he perceived that she lacked the skills necessary to be an effective teacher . . . [and had] deficient classroom management and lesson-planning skills." In the absence of evidence that "the Board allowed teachers of another race to work at schools even if their presence would have contributed to a racial imbalance among that school's faculty," Koszola could not make out a *prima facie* case under *McDonnell Douglas* assuming that the consent decree informs the inquiry. See *Greer*, 267 F.3d at 728.

Treating this as a straightforward Title VII case, Koszola also loses. She has not identified a nonwhite comparator who was hired by the schools to which she applied and who is similarly situated to her in all material respects. With respect to the five nonwhite hires, Koszola has conceded that she does not "know anything about their teaching skills and qualifications." Likewise, Koszola has admitted that she does not "know the name, qualifications, date of assignment, or otherwise have any personal knowledge regarding any persons who were assigned to full-time positions which she sought with the Chicago Public Schools." There is no evidence in the record showing that Koszola attempted to obtain this information from the Board or other sources. As we have often stated, summary judgment "is the 'put up

or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). Koszola's evidence falls woefully short. She has failed to provide the court with any information regarding the individuals allegedly hired in her stead, other than their race, and she has made several damaging admissions confirming that she lacks such information. Koszola has thus failed to establish a genuine issue of material fact on the question whether the Board discriminated against her.

## III

For these reasons, we AFFIRM the judgment of the district court.

A true Copy:

Teste:

*Clerk of the United States Court of Appeals for the Seventh Circuit*